Linscott *v.* Fernald & al.

LINSCOTT *vs.* FERNALD & AL.

Where the course first given in a deed of conveyance was north 69 degrees west, forty-six rods, and thence to a certain range-line, and by that line, and other courses and monuments, to the beginning; and this description was intelligible, and unambiguous, agreeing with all the monuments given;— the grantor was not permitted to prove by parol that the first course actually run by the surveyor, at the time of the conveyance, was *south* 69 degrees west, which would equally well agree with all the other courses and monuments in the deed; and that the surveyor, who also wrote the deed, inserted *north* instead of *south*, by mistake.

In an action of trespass *quare clausum fregit*, the defendants claimed the title to the *locus in quo* under a deed from *William Linscott* the plaintiff, to *James Linscott*, dated *April* 22, 1822, conveying a tract of land in *Shapleigh*, bounded thus:—" beginning at the county road opposite *Joseph Linscott's* corner, and running *north* 69 degrees west, forty-six rods, thence north 86 degrees west to the range line, thence south, on said range line, to *Joseph Linscott's* land, thence easterly, by said *Joseph Linscott's* land, to said county road, and

Linscott *v.* Fernald & al.

northwesterly, by said county road to the place begun at," &c. *James Linscott* mortgaged this property to one *Pugsley*, by a more general description, bounding it, on the side now disputed, by *William Linscott's* land ; and the defendant *Fernald* purchased his right in equity of redemption, at a sheriff's sale.

At the trial before *Parris J.* the plaintiff offered to prove by parol that in his deed to *James Linscott* the first course was written *north,* instead of *south,* 69 degrees west, by mistake, the *locus in quo* being between those two courses. To this the defendants objected, as contradicting a deed which was free from ambiguity. The Judge, however, admitted the testimony.

He then called the surveyor, who surveyed the land at the time of the conveyance, and wrote the deed ; by whom, and by other witnesses it appeared that the course actually run was *south* 69 degrees west, and it was supposed that the deed was so written ;—that if the line ran *north* 69 degrees west, it would describe a tract between twenty and thirty acres larger than was surveyed, and would include the orchard ;—and that the grantor had exclusively occupied the orchard ever since. *James Linscott* testified to the same facts ; adding that he never occupied nor claimed beyond a line running *south* 69 degress west ; on which line there was no fence ; but there was one near it, for a part of the distance. At the end of the forty-six rods, on the course *south* 69 degrees west, a stake was put down as a bound near a heap of stones ; which remained more than two years ; and on the range line a yellow oak tree was marked by the surveyor as a corner ; but neither of these monuments were referred to in the deed. And it did not appear that any one had claimed to hold by the line mentioned in the deed, till a survey was taken by order of court, to be used at the trial of this action.

Upon this evidence a verdict was taken by consent, for the plaintiff, subject to the opinion of the court upon the admissibility of the testimony offered, to vary the description given in the deed.

*J. Holmes* and *D. Goodenow,* for the plaintiff, argued against the iniquity of allowing the defendants to take advantage of so palpable a mistake of the scrivener, in drawing the deed ; and urged, on

---

Linscott *v.* Fernald & al.

grounds of general policy, the importance of administering relief in such cases, at law, by the principles of equity, where no court of chancery existed to correct the mistakes of parties by the exercise of its peculiar functions. In some other States, the force of this necessity of freeing the law from the odium of imbecility had been felt, and acted upon. *Swift v. Hawkins,* 1 *Dal.* 17. *Bayard's Ev.* 88.

As to the admissibility of parol proof to contradict a deed; it cannot be laid down, as a general rule, either that it is not to be admitted in any case, or that it is to be received in all cases. *Washburn v. Merrills,* 1 *Day,* 139. In many States the rule, in questions of boundary, is either greatly relaxed, or wholly disregarded. *Mageehan v. Adams' lessee,* 2 *Bin.* 109. *Baker v. Seekright,* 1 *Hen. & Munf.* 177. *Loften v. Heath,* 2 *Hayw.* 347. *White v. Eagan,* 1 *Bay,* 247. *Middleton v. Perry,* 2 *Bay,* 539. 2 *Dal.* 196. And in Massachusetts parol evidence was admitted, in a case exactly similar to the case at bar. *Webb v. Winslow, Cumb.* 1799, in 3 *Dane,* 398. sec. 7.

But however this may be, the defendants cannot set up title under *James Linscott* to the *locus in quo,* he being disseised of it at the time of his mortgage to *Pugsley;* by which, therefore, nothing passed to the mortgagee. The grantor being disseised, the grantee's entry was itself a trespass, the continuance of which is not justified by his deed. *Hathorne v. Haines,* 1 *Greenl.* 238.

*J.* and *E. Shepley,* for the defendants.

The opinion of the Court was delivered at the ensuing term in *Cumberland,* by

MELLEN C. J. The only question of any importance in this case is, whether parol evidence was admissible to explain the deed from the plaintiff to *James Linscott,* dated *April* 22, 1822, in respect to an alleged mistake in the description of the land conveyed. It is contended that the facts reported present a case of a latent ambiguity, which, on legal principles, may be proved and corrected by the introduction of parol evidence. The general principle that deeds and other instruments in writing cannot be contradicted, varied or explained by parol evidence, is established by a host of decisions, and it

Linscott *v.* Fernald & al.

seems not to be denied on this occasion. So that we have only to inquire whether the deed in this case is one admitting of explanation on the ground of mistake, or as of doubtful construction by reason of a latent ambiguity. On this general subject, also, there are numerous decisions to be found in our law books in which the question has been presented in a vast variety of forms. The practice of admitting parol evidence for the purpose of correcting a mistake is most frequent in courts of equity ; and such proof is generally inadmissible in a court of law, to show a mistake in a written instrument. *Fitzhugh v. Runyan* 8. *Johns.* 375. *Dwight v. Pomeroy & al.* 17. *Mass.* 303. In the case of *Doe v. Chichester, Dow* 65. it was observed by Sir *Vickary Gibbs,* that courts of law had been jealous of extrinsic evidence for the purpose of explaining the intention of a testator, and that he knew of one case only in which it is admitted, and that is when an ambiguity is introduced by extrinsic circumstances. In *Hatch v. Hatch* 2. *Hayw.* 32. parol evidence was admitted to show what was meant by a devise of " a tract of land called the *Beaver Dam."* So a description of a farm as the one on which the grantor then lived, was a case of latent ambiguity, explainable by parol. *Doolittle v. Blakeley* 4. *Day* 265. So the identical monument referred to in a deed is always a subject of parol proof. *Proprietors of Claremont v. Carleton* 2. *N. Hamp. Rep.* 373. But parol evidence to prove that certain property was intended to have been comprehended in a deed of settlement, was rejected. *Barret v. Barret* 4. *Dessaus.* 447. The case before us seems to be a plain one ; but as the counsel for the plaintiff have urged their arguments at some length in support of their construction, we have taken a wider view of the cause than we should have otherwise done.

Is there any latent ambiguity in the language of the deed in question, in relation to the description of the lands conveyed ? If not, parol proof is neither necessary or proper. The description begins at an undisputed point, and runs " *north,* 69 degrees west, forty-six rods ; *north* eighty-six west to the range line ; thence *south* on said range line to *Joseph Linscott's* land ; thence easterly by said *Linscott's* land to said county road ; thence *north-westerly* by said county road to the place begun at." By the plan laid before us at the argument, it

appears that every monument referred to in the deed, is situated as therein described; and that on the face of the earth there is no kind of disagreement between the courses and boundaries, as there found, and as they are all stated in the deed. Where then is the ambiguity? A latent ambiguity arises from extrinsic circumstances; but in the case at bar, such circumstances do not exist to create any ambiguity.

Those extrinsic circumstances which the law contemplates and has reference to, are those which are either inconsistent with the language of the deed in some respects, or which render parol evidence necessary for our understanding it. The usual illustration of the rule and its operation, is that of the description of a devisee, or of an estate, in a will, where it turns out that there are two persons, or two estates, of the same name and description. When a grantee receives his deed and repairs to the land, and upon following the description as to courses and distances, finds a perfect agreement between them and the monuments mentioned, how can it be truly said that there is any latent ambiguity in such a deed, arising from an extrinsic circumstance. On the contrary, supposing that such a grantee, on repairing to the lands conveyed, should commence running it out by the courses described; suppose the first course from an undisputed monument to be "north-west five hundred rods to the great elm, so called;" but on examination, it should be found that the course is "*north*" to the "great elm." Here is a difficulty arising from an extrinsic circumstance. In such a case, parol proof may be introduced to show that there is a tree usually called and well known by the name of the "great elm," and but one such, and that the course "north-west" from the agreed point of departure would never strike the tree, but that a *north* course would. Or suppose that the great elm had decayed or been cut down, so that no vestige of it could be found at the time of surveying the line; still, parol evidence might be admitted to show that a tree known by that name once existed, and where it stood; and that the place was *north* from the point of departure; here the latent ambiguity would be removed by the parol evidence, and the error in the course described in the deed be corrected by it. But in the present case, the first monument mentioned is the range line, and it appears that the course *north* 69 degrees west, as well as

the course *south* 69 west, will strike the range line ; and upon the construction given to the deed by both parties, the second monument is *Joseph Linscott's* land.   It would seem, therefore, that in the present case there could be no occasion for the introduction of parol evidence, as there is no ambiguity to be removed; and when not necessary, it is not admissible.

The counsel for the plaintiff, however, have cited several cases to prove that the parol, explanatory evidence was properly admitted in the case at bar.   The case of *Webb v. Winslow,* cited from *Dane's Abridgment,* is very briefly stated, and we have very few facts by which to learn the grounds of the decision.   The trial was had when the court had no time for deliberation, or examination of books.   It is not said whether there was any monument mentioned as standing at the end of the line " south 29 degrees *west,*" as expressed in the deed ; if there was, and yet the monument really stood at the end of a line drawn south 29 degrees *east,* which was contended to be the true line, then surely the evidence was properly admitted.   The date of the deed is not given, though a grant to *Ingersol* was dated 1729. It was probably an ancient deed, as evidence of possession was offered and allowed to correct the mistake.   So in the case of *Sherman v. Noyes,* decided in 1799, being the very next case stated by Mr. *Dane,* parol evidence of the position of monuments was admitted to correct the mistake as to course.   In *White v. Eagan* 1. *Bay* 247, the land was described as bounded *north* on Sir *John Colleton* and *south* on *Coxe ;* when in fact it was bounded *south* on *Colleton* and *north* on *Coxe ;* parol evidence was admitted to correct the mistake.   Here was a latent ambiguity, description and fact not agreeing.   In *Middleton v. Perry* 2. *Bay* 539, a grant was said to be bounded on " *Cedar Creek,* waters of *Broad River,*" and parol proof was admitted to show a mistake by the surveyor, who originally laid out the grant, in stating the land as lying on " *Cedar Creek,* waters of *Catawba* river" ; there were two creeks of the same name.   The party was allowed to show this mistake, not as to course or distance, but a part of the name of the boundary.   In the case before us the plaintiff wishes to contradict his own deed, where the monument is truly stated.   In *Baker v. Seekright* 1. *Hen. & Munf.*

Linscott v. Fernald & al.

177, there were only course and distance given; and the court admitted parol evidence of marked trees, on a line varying from the course in the deed, to establish it as the true line. The jury returned a plan of the land to which they referred in their verdict; and the counsel contended that it could not be contradicted, as it was expressly made a part of the record. The court assigned no reasons for their opinion. The case cited from 1. *Day* 139, was in chancery, and properly examinable in such a tribunal. The case from 2. *Dal.* 196, decided only that a receipt was a subject of explanation by parol evidence. Some other cases were also cited, which seem not to vary the principle contended for by the counsel for the defendant. The admission of the principle in such a case as the present would serve to render titles to real estate dependent, not on deeds of conveyance, and the language of the grantor, and courses, distances and monuments, but on the mere memory of witnesses, repugnant to such descriptive language in every essential particular.

There is no question that where the course and monument in a deed do not agree, the monument is to govern; so this court decided in *Cate v. Thayer* 3. *Greenl.* 71. In the act incorporating the town of *Dresden*, one of the lines was—"from thence on a north northeast course to the northerly line of said town, including the whole of the farm or land there belonging to the estate of Doctor *Gardiner*,"—and the line so running would not include the whole of the farm. The court, therefore, in the above case, considered that the line must give way and be established so as to include the land; but had not that farm been alluded to in the deed in the above case, parol evidence would not have been admitted to remove any supposed error in the course, and vary it in accommodation to such supposed error.

The plaintiff was permitted to offer the evidence stated in the report, and prove that a short time before the deed was written the land was run out which was intended to be conveyed, by a course *south* 69 degrees west, instead of *north* 69 degrees west, that the surveyor wrote the deed, and that he recognised the place and course of his running by certain monuments set up by him. Can the plain-

Linscott v. Fernald & al.

tiff be permitted to contradict his own deed in this manner, in an action against a man claiming under *James Linscott*, the grantee ; the defendant too having no knowledge of such alleged mistake or ambiguity in the deed? We apprehend there are numerous cases which settled this question in the negative. In *Jackson v. Bowen* 1. *Caines* 358, the court decided that parol evidence could not be admitted to change one of the lines in a deed on the ground of mistake as to its length, from 36 chains to 29 chains. *Thompson J.* in delivering the opinion, said he had not the least doubt it was not to explain any ambiguity, but directly contradictory to the deed and manifestly inadmissible. The same principle is settled, or rather pronounced as unquestionable, in the case of *King v. King* 7. *Mass.* 496. There the demandant offered parol evidence to prove that the demanded premises had always been known and called by the name of the mill privilege, and that the deed from the tenant to the demandant was understood and intended by the parties to describe and con vey the same to him. The court unanimously decided that the evidence was inadmissible, as the deed had no reference to extraneous circumstances, or any latent ambiguity. It should be observed that the alleged intention and understanding of the parties was the only ground of the motion ; and in the case we are now considering, there was nothing more. So in the case of *Townsend v. Weld* 8. *Mass.* 146, it was decided that parol evidence of an agreement on the part of the plaintiff, that, on certain conditions, the defendant should not be answerable on his covenants, was inadmissible. It was an attempt to control the effect of a sealed instrument by parol evidence which is not permitted, as the court observed.

We will not multiply authorities on this point but only cite the case of *Small v. Quincy & al.* 4 *Greenl.* 497, and the cases there collected. It has often been decided by other courts as well as this, that where there are no monuments referred to in a deed of conveyance, or if they are gone and the place where they originally stood cannot be ascertained, the courses and distances mentioned in the deed must govern the parties and those claiming under them ; for in such case there can exist no latent ambiguity, because no extrinsic facts or circumstances exist to create it.

As to the other point relied upon by the plaintiff, viz. that if the land in question did pass by his deed to *James Linscott*, still nothing passed by *James'* deed to *Pugsley*, because, at the time of executing it, he was disseised by the plaintiff, it cannot avail him. In the first place it appears by the report that the land was not inclosed and separated from the adjoining land by fences. And though he had occupied the orchard ever since the deed was made to *James*, yet it does not appear that he occupied it adversely when *James* conveyed to *Pugsley*. When a man sets up a title by disseisin he must establish such a title by strict proof. *Pro. Ken. Pur. v. Laboree*, 2 *Greenl.* 275.

We are all of opinion that the verdict cannot be retained.

*Verdict set aside and a new trial granted.*